KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.
SUMNER SQUARE
1615 M STREET, N.W.
SUITE 400
WASHINGTON, D.C. 20036-3215

(202) 326-7900
FACSIMILE:
(202) 326-7999

April 2, 2024

*Via ECF*

Catherine O'Hagan Wolfe
Clerk of Court
United States Court of Appeals for the Second Circuit
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

Re: *Kreindler & Kreindler LLP v. Kingdom of Saudi Arabia*, No. 23-1170 (2d Cir.)

Dear Ms. O'Hagan Wolfe:

Appellee Kingdom of Saudia Arabia ("Saudi Arabia") submits this response to the December 21, 2023 letter-brief of Appellant Kreindler & Kreindler LLP ("the Kreindler firm" or "the firm"), ECF No. 31 ("K&K Ltr."). That letter-brief responded to the Court's order directing the firm to address the Court's jurisdiction to hear this interlocutory appeal of the district court's Rule 37 attorney-sanctions order. ECF No. 24. This appeal continues what the district court described as the firm's "frivolous motions practice to evade accountability" for "multiple violations of [the district court's] Protective Orders," for "inadequate investigation" of those violations, and for willful "obstruction of [the district court's] subsequent inquiry." Ex. B, at 29. Because the firm has shown no applicable exception to the final-judgment requirement, its appeal should be dismissed.

## BACKGROUND

The factual background and procedural history are set forth in Magistrate Judge Netburn's order sanctioning the Kreindler firm. Ex. A. We summarize the relevant points here. On September 21, 2022, Judge Netburn entered an order under Rule 37(b) sanctioning the firm for violating a protective order by leaking a confidential deposition transcript to a reporter; for failing to properly investigate that leak; and for false and misleading statements to the Court about that leak. Judge Netburn found that the "breach was willful" and "was the result of deliberate coordination" between attorney James Kreindler and firm researcher John Fawcett. *Id.* at 46. She found that, "[o]nce the breach occurred, the rest of the firm was, at best, willfully blind" to the leak. *Id.* And she found that Kreindler lawyers and staff made a "number of misrepresentations" to the Court as part of "a clear effort to hinder the Court's investigation of the breach and cover-up other issues with the firm's adherence to the Protective Orders,"

including its lack of internal data security. *Id.* at 52. Judge Netburn considered several potential sanctions for the firm's pattern of misconduct. In the end, she directed that the firm "be removed from the PECs" (Plaintiffs' Executive Committees) and "pay Saudi Arabia attorneys' fees and costs related to the breach." *Id.* at 45. Her order also bars the firm from acting on behalf of other firms' clients and from collecting fees for any work done after the breach from any eventual PEC common-benefit fund. *Id.* at 57. The firm still represents its own clients.

On July 17, 2023, Judge Daniels overruled the Kreindler firm's objections to the September 21, 2022 order. Reviewing Judge Netburn's factual findings for clear error, he agreed that "James Kreindler at least had knowledge of or gave his tacit consent to Fawcett" to leak the transcript. Ex. B, at 17. He agreed that "Kreindler & Kreindler lacked any basis to represent" that "it had completed a thorough investigation." *Id.* at 21. And he confirmed that significant evidence of "deceit" fully "justifie[d] Magistrate Judge Netburn's conclusions that several senior Kreindler & Kreindler attorneys 'obstructed the [Court's] investigation.'" *Id.* at 23 (first alteration added). Judge Daniels found no merit in the firm's arguments that Rule 37(b) did not authorize the sanctions imposed. *Id.* at 23-24. He also ruled that, "independent from any authority under Rule 37," he would have removed the firm's "attorneys from the PECs" under his "inherent power." *Id.* at 27.

The Kreindler firm sought mandamus relief in this Court, filing its petition even before the July 17, 2023 order. It argued that mandamus was the only relief available because the sanctions order was not an "immediately appealable collateral order." Ex. C, at 31. After Judge Daniels overruled the firm's objections, it doubled down, asserting that "[m]andamus is now the *only* guaranteed means" of review because "[n]either certification of an interlocutory appeal *nor a collateral order appeal* is available here." Ex. D, at 10 (emphases added). It "protectively" filed the present appeal "in the event the Second Circuit concludes that mandamus is unavailable because the Sanctions Orders are reviewable under the collateral order doctrine." ECF No. 1-1, at 1. Even while doing so, it continued to insist that "mandamus is proper because, *inter alia*, appellate review by direct appeal is not available at this time." *Id.*

While the mandamus petition was pending, *Daubert* and dispositive-motions briefing went forward in the district court. The current PECs "conferred with" the Kreindler firm on the *Daubert* briefing, and all Plaintiffs (including the *Ashton* Plaintiffs, represented by the Kreindler firm) jointly "file[d] a single omnibus *Daubert* motion." Dist. Ct. ECF No. 8972. As for dispositive motions, the *Ashton* Plaintiffs first sought to file separately from the PECs, and Judge Netburn granted its request. Dist. Ct. ECF No. 9026, at 2-3 (permitting a separate filing by "*Ashton* counsel"). The *Ashton* Plaintiffs later changed their mind and again filed jointly with the PECs. Dist. Ct. ECF No. 9448. That joint filing was the firm's own decision; Judge Netburn has stated on the record that her sanctions order does not affect decisions about which counsel can file which motions. *See* Dist. Ct. ECF No. 9009, at 22:15-23:1 ("What is appropriate with respect to Ashton has nothing to do with counsel's role on the PECs."). The Kreindler firm has

filed several individual motions since its removal from the PECs. Neither Judge Daniels nor Judge Netburn has suggested that the firm's non-PEC status was relevant to those motions.[1]

On November 21, 2023, this Court denied the mandamus petition without calling for a response. No. 23-178, ECF No. 74. It ruled that the Kreindler firm "ha[d] not demonstrated that it lack[ed] an adequate, alternative means of obtaining relief, that its right to the writ [wa]s clear and indisputable, and that granting the writ [wa]s appropriate under the circumstances." *Id.* The firm then changed its mind about the collateral-order doctrine. It now insists (at 5) that this Court has jurisdiction over an immediate appeal "under . . . longstanding precedent." (Boldface and capitalization omitted.) It asks this Court to review both the district court's authority to sanction it under Rule 37(b) and the factual findings that Judge Netburn made and Judge Daniels confirmed in support of the sanctions. ECF No. 11, Add. B.

## ARGUMENT

This Court lacks jurisdiction to hear this immediate appeal from a Rule 37 attorney-sanctions order. Under 28 U.S.C. § 1291, courts of appeals review only "final decisions of the district courts." Typically, that means decisions that "end[ ] the litigation on the merits and leave[ ] nothing for the court to do but execute the judgment." *Van Cauwenberghe v. Biard*, 486 U.S. 517, 521-22 (1988). A "small category" of other "collateral order[s]" also qualify as "final." *Cunningham v. Hamilton Cnty.*, 527 U.S. 198, 204-05 (1999). That "small category includes *only* decisions" that (1) "are conclusive"; (2) "resolve important questions separate from the merits," and (3) "are effectively unreviewable on appeal from the final judgment in the underlying action." *Id.* at 204 (citing *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949)) (emphasis added). This appeal does not satisfy the second or third *Cohen* factors. Decades of precedent foreclose the Kreindler firm's contrary arguments.

### I. Rule 37 Attorney-Sanctions Orders Are Not Immediately Appealable

The Supreme Court held in *Cunningham v. Hamilton County* that Rule 37 attorney-sanctions orders are not "final decisions" under § 1291. That case involved an attorney who sought interlocutory appeal of a Rule 37 order that "disqualif[ied]" her "as counsel for plaintiff." 527 U.S. at 201. In ordering dismissal of that appeal, the Supreme Court concluded that "a sanctions order imposed on an attorney" under Rule 37 "is not a 'final decision' " and therefore cannot support an interlocutory appeal. *Id.* at 200, 209-10.

---

[1] *E.g.*, Dist. Ct. ECF No. 8923 (Netburn, J.) (ruling on *Ashton* Plaintiffs' request for further discovery); Dist. Ct. ECF No. 9020, at 4-5 (Daniels, J.) (ruling on *Ashton* Plaintiffs' motion for reconsideration of earlier order); Dist. Ct. ECF No. 9231 (Daniels, J.) (ruling on *Ashton* Plaintiffs' objections to discovery order).

There, as here, the sanctions order "neither ended the litigation nor left the court only to execute its judgment." *Id.* at 204. Nor was it "final" under the collateral-order exception. Rule 37 sanctions orders as a class do not stand "separate from the merits." *Id.* at 205. Often, those orders are "inextricably intertwined with the merits of the action," because "[a]n evaluation of the appropriateness of sanctions may require the reviewing court to inquire into the importance of the information sought or the adequacy or truthfulness of a response." *Id.* at 205-06. Although "not every discovery sanction will be inextricably intertwined with the merits," the Supreme Court has "eschewed a case-by-case approach to deciding whether an order is sufficiently collateral." *Id.* at 206. Instead, it has established a categorical test. *Cunningham* further held that, "[e]ven if the merits were completely divorced from the sanctions issue," Rule 37 orders would not satisfy the third *Cohen* factor because they are not "effectively unreviewable" after final judgment. *Id.* On this point, "the identity of interests between the attorney and client . . . counsels against treating attorneys like other nonparties for purposes of appeal." *Id.* at 206-07. Even if an attorney has "a personal interest in seeking vindication from the sanctions order," the client's interests take precedence. *Id.*

*Cunningham*'s analysis applies to all attorney-sanctions orders under Rule 37, not just to a subcategory. To be sure, *Cunningham* addressed a discovery violation and sanction under Rule 37(a). This appeal involves a protective-order violation and sanction under Rule 37(b). But neither *Cunningham*'s language nor its reasoning limits its holding to sanctions under Rule 37(a). This Circuit has confirmed as much. It has rejected the collateral-order doctrine's application to attorney-sanctions orders issued under Rule 37(b). *See New Pac. Overseas Grp. (U.S.A.) Inc. v. Excal Int'l Dev. Corp.*, 252 F.3d 667 (2d Cir. 2001) (per curiam) (finding no jurisdiction to review the lower court's Rule 37(b) attorney-sanctions order, *see* 2000 WL 377513, at *6-10 (S.D.N.Y. Apr. 12, 2000)). As the *New Pacific Overseas* Court explained, "an order imposing Rule 37 sanctions against an attorney, either alone or jointly and severally with his client, is not an appealable 'final decision.'" 252 F.3d at 670. This Circuit has taken the same view of Rule 37(b) orders imposing sanctions against a party, rather than against its counsel. *See Linde v. Arab Bank, PLC*, 706 F.3d 92, 105 (2d Cir. 2013). It has also extended *Cunningham* to sanctions under a court's "inherent powers because, like Rule 37 sanctions, these appeals will often implicate the merits of the underlying action"; and, even if attorneys are "no longer acting as the attorney" for their client, that "does not render the issues unreviewable on appeal." *SEC v. Smith*, 710 F.3d 87, 96 (2d Cir. 2013).

On its face, and as construed by *New Pacific Overseas*, *Linde*, and *Smith*, *Cunningham* categorically bars interlocutory appeals from orders sanctioning parties and their attorneys, including orders under Rule 37(b). That alone requires dismissing this appeal.

**II. The Kreindler Firm Fails To Show Any Basis for Interlocutory Appellate Jurisdiction over the District Court's Order**

The Kreindler firm makes two arguments for jurisdiction. *First*, it argues (at 5-6) that appeals "limiting the role of nonlead counsel in a consolidated action" are immediately reviewable, whether or not they are sanctions orders. *Second*, it argues (at 6-8) that a Rule 37(b) sanctions order for a nonparty's protective-order violation is immediately reviewable, whether or not the nonparty is an attorney. Each argument lacks merit.

**A. Orders Modifying Attorneys' Status Are Not Immediately Appealable**

**1.** An order altering an attorney's status and responsibilities – even as drastic a measure as disqualifying an attorney from a case – cannot be immediately appealed. In *Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424 (1985), the Supreme Court assessed a disqualification order issued following two "alleged incidents of misconduct." *Id.* at 428. The misconduct there was similar to the misconduct here. The disqualified attorneys had first improperly "release[d] . . . information to" the press, and then "prepar[ed] and obtain[ed] a statement . . . without regard for [its] truth" to "protect [the] firm's financial interest and to thwart an investigation." *Id.* (internal quotation marks omitted). The firm there, like the Kreindler firm here, tried to bring an interlocutory appeal challenging the order against it.

The Supreme Court held that "orders disqualifying counsel in a civil case are not collateral orders subject to immediate appeal." *Id.* at 426. Its approach foreshadowed the reasoning *Cunningham* would later adopt. Interlocutory review is unneeded because "the propriety of the trial court's disqualification order can be reviewed as effectively on appeal of a final judgment as on an interlocutory appeal." *Id.* at 438. Further, "orders disqualifying counsel in civil cases, as a class, are not sufficiently separable from the merits to qualify for interlocutory appeal." *Id.* at 440. Although some individual disqualification orders may be "separable from the merits of the litigation," the Supreme Court found that irrelevant. *Id.* at 439. It adopted a bright-line rule that "expressly rejected" any "case-by-case determination of whether a particular ruling should be subject to appeal." *Id.*

This Circuit has applied that bright-line rule to other contexts. Two years after *Richardson-Merrell*, it held that "a ruling denying appointment of a shareholders' committee in a bankruptcy proceeding" could not be immediately appealed because it was not "effectively unreviewable on appeal from a final judgment." *In re Johns-Manville Corp.*, 824 F.2d 176, 181 n.2 (2d Cir. 1987). Last year, this Circuit concluded that it lacked jurisdiction to hear an interlocutory appeal from an order denying a third-party motion to substitute counsel. *In re ALBA Petróleos de El Salvador S.E.M. de C.V.*, 82 F.4th 105, 108 (2d Cir. 2023). In reaching that result, it characterized *Richardson-Merrell* as holding that an "appeal of a final judgment" suffices when "a district court *actually* disqualifies a party's counsel in a civil case." *Id.* at 112. It also observed that, "[i]n the civil disqualification context, . . . the Supreme Court rejected the

argument that an interlocutory appeal is needed to vindicate the client's choice of counsel or the interest of the attorneys." *Id.* at 114 (internal quotation marks omitted).

**2.** The logic of *Richardson-Merrell* applies with even greater force here. Judge Netburn's order (at 55) removes the Kreindler firm from the Plaintiffs' Executive Committees. That is, it changes the firm's role *from* lead counsel *to* nonlead counsel. It does not limit the firm's role *as* nonlead counsel. The firm continues to represent the *Ashton* Plaintiffs and to file motions on their behalf. Judge Netburn also declined to withdraw the Kreindler firm's access to confidential material because – although she has "lost faith in the firm's ability to conduct this litigation responsibly . . . as a representative of *all* plaintiffs" – "hundreds of plaintiffs . . . continue to trust the firm to advocate for *their* claims." *Id.* (emphases added). An order changing counsel's status but allowing them to represent their own clients has less effect on both the clients' interests and the attorneys' than the disqualification in *Richardson-Merrell*.

In general, orders changing counsel's status will often turn on considerations related to the merits of the case. *See ALBA Petróleos*, 82 F.4th at 113 ("An issue is not separate from the merits if its resolution requires the courts of appeals 'to review the nature and content of [the merits] proceedings.'") (quoting *Richardson-Merrell*, 472 U.S. at 439) (alteration in *ALBA Petróleos*). Review would require a court of appeals to assess the positive and negative effects of a removed firm's conduct, the high or low quality of that firm's work during its time as lead counsel, the relative quality of other counsel's work, and the prospective future value that the firm could provide as lead counsel. Here, Judge Netburn concluded that "[p]rohibiting the use of the [leaked] [t]ranscript" would be too weak a sanction because "it is not clear that the transcript is important enough to make its preclusion meaningful." Ex. A, at 48-49. The transcript's relative "importan[ce]" can be judged only by reference to the merits of the underlying dispute. Similarly, Judge Netburn considered that "removing Kreindler & Kreindler from the PECs will impact the many plaintiffs who have chosen Kreindler & Kreindler as their counsel." *Id.* The magnitude of that effect again depends on a view of the nature and magnitude of the firm's overall contributions, which requires familiarity with the merits.

**3.** The *Richardson-Merrell* rule (and its application here) also makes practical sense. If courts of appeals had jurisdiction over interlocutory appeals of orders changing counsel's status, appeals would be automatic whenever a court chose or replaced lead counsel in ongoing litigation. That would produce waste and delay. On the other side of the ledger, such appeals would seldom prevail. Orders changing counsel's status necessarily involve case-specific fact-finding and credibility determinations. Appellate courts handle those matters with great care.

The order at issue illustrates those concerns. Judge Netburn determined that most of the Kreindler witnesses were not credible. Among other things, she found it implausible that Fawcett acted without "the knowledge or at least tacit consent of lead attorney James Kreindler," based on the timing of the leak, the timing of related phone calls, and the witnesses' inconsistent and far-fetched explanations. Ex. A, at 2, 36-49. She found that Fawcett's professed personal

motive for the leak ("to protect the children of Morocco") was "fabricated" by Kreindler attorneys and "intended to make Fawcett appear more sympathetic." *Id.* at 28. Kreindler's and Fawcett's real motive was "to use press attention to force Saudi Arabia into a settlement" as part of its "litigation strategy." *Id.* at 37. Those findings rested on her in-court assessment of Kreindler's and Fawcett's testimony and credibility. *See id.* at 8 (describing "a tearful moment" in which Kreindler compared Fawcett's "honest[y] and nobility" to those of "his own father"); *id.* at 19 (rejecting Fawcett's testimony after "[h]aving witnessed [him] on the stand").[2]

Judge Daniels reviewed Judge Netburn's findings for clear error and found none. Although the Kreindler firm now emphasizes its legal challenge to the district court's order, it also seeks to challenge those findings under a clear-error standard. There is little practical value in this Court rushing to provide a second layer of clear-error review. Further, offering such review would only encourage other parties to press fact-specific objections to orders changing counsel's roles. All this shows the wisdom of Congress's choice not "to provide explicitly for immediate appellate review of such orders." *Cunningham*, 527 U.S. at 210.

**4.** The Kreindler firm's contrary argument rests on a single sentence from a stray footnote in a per curiam opinion written half a century ago. *See Farber v. Riker-Maxson Corp.*, 442 F.2d 457, 459 n.1 (2d Cir. 1971). That sentence states, without reasoning, that the Court had "jurisdiction over" the appeal "under the 'collateral order' doctrine." *Id.* Extrapolating from that bare statement, the Kreindler firm contends (at 5-6) that "the Court has jurisdiction over this appeal based on *Farber* alone." That contention lacks any merit.

*Farber* involved "an appeal by two plaintiffs" of district court orders that (broadly) required pleadings and motions to be served by lead counsel, that required the court's permission before other counsel could file motions, and that barred a firm that was not lead counsel and that had not sought permission from moving for summary judgment. 442 F.2d at 458-59. Nothing in those orders dealt with either disqualification of counsel or a change in the status of counsel. *Id.* Nor, unlike this appeal, was the appeal in *Farber* brought by counsel in their own name. Instead, their clients sought review to be able to make arguments of their choosing. *Id.*

*Farber*'s jurisdictional holding (if any) is also unclear. Although the footnoted sentence finds jurisdiction "under the 'collateral order' doctrine," it offers no insight into what the Court

[2] *See also* Ex. A, at 39 (finding that the Kreindler firm's so-called "investigation" of the leak "reflect[ed], at best, efforts to remain willfully unaware of what Kreindler and Fawcett did, and at worst, active collusion in a cover-up"); *id.* at 42 (finding that the firm "tried to use the Court's investigation as a forum to compound the damage caused by the breach" by "introduc[ing] gratuitous and irrelevant material to disparage Saudi Arabian personnel"); *id.* at 52 (finding that Kreindler attorneys and employees including James Kreindler, Andrew Maloney, Megan Benett, and Stephen Pounian made sworn statements to the district court that were either knowingly false or knowingly misleading).

took that doctrine to require. Nor does the two-page opinion indicate whether the parties ever specifically briefed, or whether the Court ever specifically contemplated, the constraints on which orders qualify as "final decisions" for purposes of § 1291. *Farber* has the hallmarks of a "drive-by jurisdictional ruling, in which jurisdiction has been . . . assumed without discussion by the court." *United States v. Stoerr*, 695 F.3d 271, 277 n.5 (3d Cir. 2012) (cleaned up). Such a ruling "does not create binding precedent." *Id.* At the very least, such a ruling does not establish a rule that can be extended to a different factual context, as the Kreindler firm seeks to do here.

Even if *Farber* supported the Kreindler firm's position, it would no longer be good law. *Farber* predated the Supreme Court's holdings in *Richardson-Merrell* and *Cunningham*, which displaced contrary Circuit precedent. *See Wojchowski v. Daines*, 498 F.3d 99, 106 (2d Cir. 2007) (noting that past panel decisions are not binding when "there has been an intervening Supreme Court decision that casts doubt on [the Circuit's] controlling precedent"). *New Pacific Overseas* recognized that "*Cunningham* effectively overrule[d] this Circuit's law as articulated" in certain prior cases. 252 F.3d at 670. A sentence from a footnote in an easily distinguishable case cannot stand against those authorities.

**B. Orders Sanctioning Attorneys for Protective-Order Violations Are Not Immediately Appealable**

The Kreindler firm concedes (at 6) that *Cunningham* "directly addressed the appealability of certain Rule 37 sanctions," but argues that the opinion "does not apply to the category of sanctions here." It describes that category (at 6) as "Rule 37(b) sanctions of a nonparty based on its own duty under an umbrella protective order." (Boldface and capitalization omitted.) No principled distinction separates Rule 37 sanctions against attorneys for protective-order violations from Rule 37 sanctions against attorneys for other violations. Many cases the Kreindler firm relies on – including *Cunningham*, *New Pacific Overseas*, *Linde*, and *Smith* – considered (and rejected) the very arguments it now advances.

*Cunningham* makes clear that Rule 37 attorney-sanctions orders present no "important questions separate from the merits . . . in the underlying action." *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 42 (1995), *cited in* K&K Ltr. 7. To be sure, the question whether an attorney has violated a protective order may stand apart from the merits. But the same cannot be said of the related questions whether a sanction (and, if so, what sanction) should be imposed for that violation. Sanctions often bear directly on the underlying dispute – for instance, where a court bars future reliance on a leaked document. Although Judge Netburn declined to apply that remedy here, judges have done so in other cases. *Compare* Ex. A, at 49, *with City of Almaty, Kazakhstan v. Ablyazov*, 2018 WL 1229730, at *7 (S.D.N.Y. Mar. 5, 2018) (as a sanction, "prohibit[ing]" a party "from using" a leaked "[t]ranscript in this action or any other action"). Decisions about whether to disqualify counsel or limit counsel's responsibilities will often depend on merits considerations, for the reasons discussed above. *See supra* p. 6. Finally, even if an appeal of a Rule 37 attorney sanction for violating a protective order could sometimes avoid

the merits altogether, that would still not be enough. As the Supreme Court has cautioned, "case-by-case" evaluation is inappropriate when applying the collateral-order doctrine. *E.g.*, *Cunningham*, 527 U.S. at 206; *Richardson-Merrell*, 472 U.S. at 439.

The Kreindler firm also fails to show that this sort of order is " 'effectively unreviewable on appeal from the final judgment in the underlying action.' " K&K Ltr. 7 (quoting *Swint*, 514 U.S. at 42). True, "nonparties generally have no right of appeal from a final judgment." *Id.* But as *Cunningham* explains, "[t]he effective congruence of interests between clients and attorneys counsels against treating attorneys like other nonparties for purposes of appeal." 527 U.S. at 207; *see also Taifer v. Town of Clarkstown*, 325 F. App'x 41, 43 (2d Cir. 2009) ("[T]he imposition of sanctions against the Town's lawyer can be reviewed on appeal from a final judgment in this action."). Immediate appeal is thus not needed to secure review. Indeed, it "would be counterproductive because it would allow the sanctioned party to cause additional delays and costs," *Smith*, 710 F.3d at 95, and because it would "undermine trial judges' discretion to structure a sanction in the most effective manner," *Cunningham*, 527 U.S. at 208-09. This appeal again illustrates those concerns. Judge Netburn reasoned in her sanctions order that the Kreindler firm's "conduct . . . show[ed] that it will fight tooth and nail to avoid accountability for discovery violations, consuming both the Court and all parties' resources in the process." Ex. A, at 50; *see id.* ("Another draining debacle is out of the question.").

*Funk v. Belneftekhim*, 861 F.3d 354 (2d Cir. 2017), is not to the contrary. That case held that some orders "striking a sovereign immunity claim can be immediately appealable." *Id.* at 364. This holding has nothing to do with Rule 37 attorney-sanctions orders generally and everything to do with the unique character of foreign sovereign immunity. For reasons of international comity, Congress has provided foreign nations with "not merely immunity from judgment, but immunity from the burden of having to defend the claim at all." *Id.* (cleaned up). "[W]hether a foreign sovereign immunity claim is struck from the case as a sanction or rejected as a ground for dismissal, the denial of immunity is effectively unreviewable after final judgment because defendants must litigate the case to reach judgment and, thus, lose the very immunity from suit to which they claim to be entitled." *Id.* at 363. *Funk* stressed "the narrowness of [its] decision," which "pertains *only* to a sanction that actually strikes a foreign sovereign immunity claim" and not even "to lesser or distinct sanctions . . . that may make it harder for a party . . . to support" such a claim. *Id.* at 364 (emphasis added). That holding offers no support for the Kreindler firm's attempt to appeal a sanction order unrelated to immunity.

The Kreindler firm closes with arguments that the Supreme Court and this Circuit have already rejected. It complains (at 8) that denying interlocutory appeal will "prejudice the due process rights of . . . the Firm." But a "disqualified attorney's personal desire for vindication" is not "an independent ground for interlocutory appeal." *Richardson-Merrell*, 472 U.S. at 434-35. That is because, "[a]s a matter of professional ethics," any "decision to appeal should turn entirely on the client's interest," not on the interests of counsel. *Id.* at 435; *see also Cunningham*, 527

Case 23-1170, Document 44-1, 04/02/2024, 3618092, Page10 of 10



U.S. at 207. Similarly, the firm cites (at 8) cases about contempt findings and professional discipline, from which attorneys *can* notice an immediate appeal. But that argument "overlooks the significant differences between a finding of contempt" and a "sanctions order" under Rule 37. *Cunningham*, 527 U.S. at 207. The former punishes, while the latter "protect[s] courts and opposing parties" during litigation. *Id.* at 208. Finally, if an attorney could seek an appeal each time it was sanctioned, it could derail a district court's protective efforts. Faced with that reality, some judges "might choose not to sanction an attorney, despite abusive conduct, in order to avoid further delays in their proceedings." *Id.* at 209; *see supra* pp. 6, 9.

The Kreindler firm also protests (at 8) that it "cannot be" that it might face "reputational harm" without "immediate appellate review." That not only can be, but indeed is, the law. *Cunningham* "candidly recognize[d] the hardship that a sanctions order may sometimes impose on an attorney" and suggested "amend[ment] [to] the Judicial Code" or the judicial "rulemaking process" as potential remedies. 527 U.S. at 209-10. No relevant amendments or rule changes have since been made. *See also Richardson-Merrell*, 472 U.S. at 425 (recognizing that "an attorney['s] . . . reputation [might be] egregiously injured by [a] trial court's disqualification decision," but still rejecting an interlocutory appeal); *Linde*, 706 F.3d at 106 ("The possibility of reputational harm to the sanctioned attorney was . . . at stake in *Cunningham*, but the Supreme Court reasoned nonetheless that any interest the attorney may have had in resolving the matter quickly was trumped by the district court's interests in 'structur[ing] a sanction in the most effective manner.' ") (quoting 527 U.S. at 209) (brackets in *Linde*).

## CONCLUSION

This Court should dismiss this appeal for lack of appellate jurisdiction.

Respectfully submitted,

/s/ *Michael K. Kellogg*

Michael K. Kellogg
*Counsel for Appellee*
*Kingdom of Saudi Arabia*

cc: Counsel of Record (via ECF)